UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Daniel T. Weathers,<br><br>    Plaintiff<br><br>v.<br><br>Steven Loumakis, et al.,<br><br>    Defendants | 2:15-cv-00027-JAD-PAL<br><br>**Order Granting in Part and Denying in Part Motion for Summary Judgment, Denying Motion to Compel Video, and Denying Motion for Leave to File Supplement**<br><br>[ECF Nos. 38, 40, 42] |

Plaintiff Daniel Weathers sues several Clark County Detention Center (CCDC) correctional officers under § 1983 of the Civil Rights Act for violating his Eighth Amendment rights by failing to provide him with protective equipment on multiple occasions while he mopped, scooped, and squeegeed the results of an overflown toilet.[1] Defendants now move for summary judgment, arguing that they enjoy qualified immunity from suit and that they neither seriously deprived him of his constitutional rights nor displayed deliberate indifference to his health and safety.[2] I find that there are genuine issues of material fact regarding the nature of these conditions, so I deny the motion for summary judgment.

## Background

On January 9, 2013, a defective toilet overflowed in Module 3 at Clark County Detention Center.[3] The overflow spread throughout the module and it was locked down.[4] Weathers was part of the clean-up crew, and he and other inmates mopped, swept, scooped, and squeegeed the

---

[1] ECF No. 7. *See also* ECF No. 38-5 at 14 (46:25–47:9 of the transcript).

[2] ECF No. 38.

[3] ECF No. 7 at 4.

[4] ECF No. 38-5 at 19 (67:22–24 of the transcript).

overflown water down a drain.[5] He was wearing his shower shoes—open-toed sandals—and was denied additional protective equipment.[6] When he asked for more protective equipment, he was told to stop complaining and to get back to work.[7] He filed grievances to the module supervisor, who apologized for failing to provide protective equipment and said he would do better in the future.[8] When the same toilet overflowed two weeks later, Weathers attests, it was déjà vu all over again.[9] He claims that the overflown water was contaminated with human waste,[10] but the defendants say it was clear and free of any human waste.[11]

## Discussion

**A.  The motion for summary judgment is granted in part and denied in part.**

### *1.  Summary-judgment standard*

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[12] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[13] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary

---

[5] ECF No. 38-5 at 14 (46:25–47:22 of the transcript).

[6] ECF No. 38-5 at 13 (42:7–14 of the transcript), 17 (65:7–12 of the transcript).

[7] ECF No. 38-5 at 19 (67:3 of the transcript).

[8] ECF No. 38-4.

[9] ECF No. 7.

[10] ECF Nos. 7, 38-5 at 12 (39:24–40:6 of the transcript).

[11] ECF Nos. 38-1, 38-3, 38-6.

[12] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[13] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

trials when the facts are undisputed, and the case must then proceed to the trier of fact.[14]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[15] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[16]

### 2. *Individual and official capacity*

Weathers sues the individual defendants both in their personal and official capacities. He must plead and prove different requirements for each capacity:

> [T]o establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation, thus, in an official-capacity suit the entity's 'policy of custom' must have played a part in the violation of federal law.[17]

Weathers must show that the defendants—in their official capacities—promulgated a rule, policy, or custom that caused a violation of his constitutional or statutory rights.[18] He has provided no evidence to support his claim against the defendants in their official capacity. In fact, the defendants argue that they are not policymakers and, thus, cannot be sued in their official capacities, and Weathers responds: "The Defendants [sic] legal argument concerning them being policymakers is irrelevant, that is not the issue or the argument, it's the Defendants

---

[14] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[16] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[17] *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

[18] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

[sic] conduct involving [Las Vegas Metropolitan Police Department] CCDC policy that matters."[19] Accordingly, Weathers seems to abandon his official-capacity theory and, in any case, he fails to present evidence to support it. I therefore grant the motion for summary judgment in favor of the individual defendants in their official capacities. But, as I thoroughly discuss in the next section, Weathers has presented sufficient evidence of these officers' personal involvement to proceed on his claims against them in their personal capacities.

### 3. *Qualified immunity*

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[20] It applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[21] "The doctrine of qualified immunity protects government officials 'from liability for civil damages [if] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[22] A right is clearly established, and immunity is inappropriate, if "a reasonable official would understand that what he is doing violates that right."[23] There does not have to be binding precedent on the issue for a right to be clearly established,[24] but non-binding authority must put officers "on clear notice that their action" violated the asserted right.[25]

It is well established that sanitation and personal safety are among the "basic necessities

---

[19] ECF No. 41 at 10.

[20] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[21] *Id.* (internal quotations omitted).

[22] *Pearson*, 555 U.S. at 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

[23] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[24] *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).

[25] *Id.* at 783.

of life" that the Eighth Amendment guarantees.[26] In *Anderson v. County of Kern*, the court held that "subjection of a prison to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."[27] Although the Ninth Circuit has not squarely addressed a defective-toilet case, several circuit and district courts have recognized that unsanitary conditions from a defective toilet can violate an inmate's Eighth Amendment rights.[28] I am persuaded by those decisions, and I now hold the same.

At this summary-judgment stage, I must consider the evidence in the light most favorable to the non-moving party and determine whether there are material issues of fact for the parties to dispute at trial. On one side, Weathers offers his sworn testimony that he was exposed to contaminated water: "It was feces, bodily fluid, nasty brown. The water was brown. It was—it was urine. It was waste coming up out of there. It was backed up, and it wouldn't stop. It just kept coming."[29] He claims that half of the cell block was affected by the flooding: "It was a big

---

[26] *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199–200 (1989); *Anderson v. County of Kern*, 45 F.3d 1310, 1314 (9th Cir. 1995); *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985).

[27] *Anderson*, 45 F.3d at 1314.

[28] *See, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("While there is no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment, exposure to human waste carries particular weight in the conditions calculus.") (internal quotations and citations omitted); *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991) ("unquestionably a health hazard" to live in "filthy water contaminated with human waste"); *Fruit v. Norris*, 905 F.2d 1147, 1150–51 (8th Cir. 1990) ("common sense" that "unprotected contact with human waste could cause disease"); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (exposure to feces-covered walls for three days not within "civilized standards, humanity, and decency"); *Cockcroft v. Kirkland*, 548 F. Supp. 2d 767, 776 (N.D. Cal. 2008) (denying qualified immunity to prison officials that knew about Cockcroft's defective in-cell toilet that would overflow sewage whenever the toilet in the adjoining cell was flushed); *Williams v. Castillo*, 2014 WL 1266126 (N.D. Cal. 2014) (genuine issues of fact "as to whether plaintiff was housed in a cell with an inoperable toilet that is filled with feces, urine, and toilet paper for 31 days, thereby exposing plaintiff to a sanitation issue that rises to the level of a serious harm within the meaning of the Eighth Amendment").

[29] ECF No. 38-5 at 12 (40:2–5 of the transcript).

5

thing because it kept coming up. And it covered the whole half of the floor, unit was flooding in this feces water. Inmates is putting towels under their door to block the water from coming in their room because it was nasty wastewater."[30] And he claims that he had no protective equipment: "[W]hat would you give to a person cleaning up water overflowing from a toilet? What kind of protection do you give that person? . . . I was in sandals, barefooted, cleaning up this water coming out of a toilet. . . . She didn't give me the protection equipment."[31]

On the other side, defendants claim that the water was clear and did not contain any hazardous or biological waste.[32] Defendants argue that "there has never been any evidence to support that hazardous sewage flowed through the cell block at any time."[33] Defendant Officer Steven Loumakis attests that he assisted in the cleanup and "There were no feces, excrement or other bodily waste present, only water."[34] He adds that "Plaintiff did not handle hazardous waste during the incident . . . which did not involve feces, excrement, or other bodily waste."[35] Defendant Officer Maribel Suey offers similar sworn statements. She states that Weathers "was already in the process of cleaning when [she] arrived, and [he] did not handle hazardous waste during the incident . . . which did not involve the clean up of feces, excrement or other bodily waste." She attests that Weathers "was not exposed to any hazards while [she] was overseeing him."[36] Suey specifically disputes Weathers's claim that he was "covered in feces, excrement and other bodily waste matter."[37]

---

[30] *Id.* (41:5–9 of the transcript).

[31] *Id.* at 18 (64:24–65:12).

[32] ECF No. 38 at 2:19–20, 3:2–4. *See also* ECF Nos. 38-1, ¶3; 38-6, ¶3.

[33] ECF No. 38 at 8:27–28.

[34] ECF No. 38-1 at ¶¶ 3–10.

[35] *Id.* at ¶ 5.

[36] ECF No. 38-6 at ¶¶ 3–6.

[37] *Id.* at ¶ 7.

This competing testimony creates a genuine dispute of material fact regarding the water's quality, which ultimately decides whether a clearly established right was violated. When "there are material issues of fact on which the issue of qualified immunity turns," the case must go to the jury.[38] So I cannot grant defendants summary judgment based on qualified immunity.[39]

### 4. *Conditions of confinement*

To survive summary judgment on a § 1983 claim, Weathers must present evidence that shows the violation of a right secured by the Constitution and laws of the United States and that the alleged violation was committed by a person acting under color of state law.[40] A "conditions-of-confinement" claim is a type of § 1983 claim where a prisoner alleges that the conditions of his confinement constitute cruel and unusual punishment in violation of the Eighth Amendment. To proceed on his conditions-of-confinement claim, Weathers must present evidence showing "that the prison official[s] deprived [him] of the 'minimal civilized measure of life's necessities'" and that "the prison official[s] 'acted with deliberate indifference in doing so.'"[41]

As I discussed in Section A(3) on qualified immunity, Weathers's testimony—taken as true—allows a reasonable jury to find that his Eighth Amendment rights to sanitation and personal safety were violated. So, I move on to the deliberate-indifference prong. The Supreme Court held in *Farmer v. Brennan* that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."[42]

---

[38] *Scott v. Harris*, 550 U.S. 372, 376 (2007).

[39] *See, e.g.*, *Espinosa v. City and County of San Francisco*, 598 F.3d 528, 532 (9th Cir. 2010) (holding that district court properly denied summary judgment on basis of qualified immunity because "unresolved issues of fact [were] also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions").

[40] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[41] *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

[42] *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants argue that "[t]here is also no evidence that the CCDC Defendants were deliberately indifferent to any health hazards that Plaintiff claims to have faced."[43] This argument ignores Weathers's testimony, which, taken as true, is sufficient for a reasonable jury to find that defendants were aware of the health risk that the overflown water posed and did nothing about it. Not only did Weathers ask for protective equipment from defendants Loumakis and Suey while he cleaned up the flooding (they didn't give him any, as even they acknowledge), he also filed a grievance with defendant Adams following the first flood.[44] Adams responded to the grievance and apologized for the lack of protective equipment: "You should have been given the proper safety equipment. It is my job as a supervisor to ensure you get it and I will do better in future [sic]."[45] And yet, Weathers had the same equipment—shower shoes, a broom, a squeegee, and a mop bucket—for the second flood.

Weathers has presented enough evidence for a reasonable jury to find that defendants were aware of the hazardous condition and indifferent to his need for protective equipment. Any contrary evidence or alternative facts that defendants present do not diminish the effectiveness of Weathers's evidence at this summary-judgment stage. Weighing this evidence is a job for a jury. Because Weathers has presented sufficient evidence to support his claims against the defendants in their personal capacities, I deny the defendants' motion for summary judgment.

**B.     The motion to produce video surveillance is denied.**

Weathers moves to compel production of video surveillance of the clean-up process for both toilet malfunctions.[46] But Weathers's motion is untimely (the deadline for discovery motions was February 3, 2017) and fails to comply with Local Rule 26-7(c) because it does not include "a declaration setting forth the details and results of the meet-and-confer conference

---

[43] ECF No. 38 at 8:8–9.

[44] ECF No. 6.

[45] ECF No. 38-4.

[46] ECF No. 40.

about each disputed discovery request,"[47] so I deny it on those grounds.[48] Additionally, I cannot compel defendants to produce a video if it does not exist, and defendants respond that the video no longer exists because the incidents occurred in January of 2013. Accordingly, I deny the motion to compel production of video surveillance.

**C.     The motion for leave to file supplemental information is denied.**

Weathers also moves for leave to supplement his opposition to the defendants' motion for summary judgment.[49] Because I deny the motion for summary judgment based on the state of the evidence even without his supplement, supplemental information is not required. I therefore deny Weathers leave to file supplemental information.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that defendants' motion for summary judgment **[ECF No. 38] is GRANTED on the claims against defendants in their official capacities** and **DENIED in all other respects.**

IT IS FURTHER ORDERED that Weathers's motion to compel production of video surveillance **[ECF No. 40] is DENIED**.

IT IS FURTHER ORDERED that Weathers's motion for leave to file supplemental information **[ECF No. 42] is DENIED**.

This case is referred to the *Pro Bono* Program adopted in General Order 2016-02 for the purpose of screening for financial eligibility (if necessary) and identifying counsel willing to be appointed as *pro bono* counsel for Plaintiff Daniel T. Weathers. The scope of appointment will

---

[47] D. Nev. Civ. R. 26-7(c).

[48] Defendants also argue that Weathers failed to request the video prior to this motion to compel and failed to meet and confer about the production of the video. But, as Weathers shows in ECF No. 46 at 16 (page 129 of the transcript), he did request the video on November 8, 2016, prior to any discovery deadline and was told "[i]f there were video of [the incidents], we would provide it to you." I do not, however, decide whether this communication during his deposition satisfies the meet-and-confer requirements because his motion has other fatal deficiencies.

[49] ECF No. 42.

9

be for all purposes through the conclusion of trial. By referring this case to the *Pro Bono* Program, I am not expressing an opinion on the merits of the case. Accordingly,

IT IS FURTHER ORDERED that this case is **referred to the *Pro Bono* Program** for appointment of counsel for the purposes identified in this order. The **Clerk of Court** is directed to **forward this order to the Pro Bono Liaison**.

DATED: September 13, 2017.

_____
Jennifer A. Dorsey
United States District Judge